IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) NO. 3:21-cr-00171 |
| v. | ) JUDGE RICHARDSON |
| | ) |
| | ) |
| [06] ROBERT ALAN RICHARDSON | |
| [07] EDWARD BURCH | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is a motion to sever filed by Defendant Robert Alan Richardson (Doc. No. 273, "Richardson's Motion") and "Memorandum of Law in Support of [Richardson's] Motion to Sever Defendants" (Doc. No. 274, "Memo"). Also pending is a motion to "Adopt Defendant Robert Alan Richardson's Motion to Sever Defendants and Incorporated Memorandum of Law" filed by Edward Burch (Doc. No. 304, "Burch's Motion") (collectively, "Motions").[1] The Government filed a response in opposition both Motions, first to Defendant Richardson's Motion (Doc. No. 285, "Richardson Response") and subsequently to Defendant Burch's Motion (Doc. No. 305, "Burch Response") (collectively, "Responses"). The Burch Response expressly adopts the Richardson Response. For the reasons discussed below, the Motions will be denied.

### RELEVANT BACKGROUND

On October 13, 2021, a grand jury in the Middle District of Tennessee returned a Superseding Indictment charging Fadel Alshalabi, Edward Klapp, and Melissa Chastain with one

---

[1] Hereinafter, the Court refers collectively to Defendant Richardson and Defendant Burch as "Defendants" and Richardson's Motion, the Memo, and Burch's Motion as "Motions." When collectively referencing the Motions herein, the Court primarily provides citations to Richardson's Memo, which was expressly adopted by Burch. Likewise, when collectively referencing the Responses herein, the Court primarily provides citations to the Richardson Response, which was expressly adopted in the Burch Response. While the Burch Response incorporates a separate memorandum of law, the Burch Response advances the same arguments made in the Richardson Response.

count of conspiracy to defraud the United States and to violate the so-called Anti-kickback statute (42 U.S.C. § 1320a-7b(b)); 17 counts of violating the Anti-kickback statute; one count of conspiracy to commit health care fraud; and six counts of health care fraud. (Doc. No. 52) On November 30, 2021, Defendant Klapp ("Klapp") appeared with counsel John Oliva and pled not guilty. (Doc. No. 92.) The following day, the Court granted respective motions (Doc. Nos. 88 and 89) for attorneys Mark S. Thomas ("Thomas") and David C. Tarras to appear pro hac vice for Defendant Klapp. (Doc. No. 91).

On August 1, 2022, a grand jury returned a Second Superseding Indictment charging additional crimes and naming additional defendants, including Defendant Richardson ("Richardson") and Defendant Burch ("Burch").[2] (Doc. No. 146). On December 14, 2022, Thomas moved to withdraw as Klapp's attorney (Doc. No. 232, "Motion to Withdraw"). The Motion to Withdraw indicated that Thomas and the Government discussed "potential conflicts related to [Thomas's] ongoing representation of Defendant Klapp" and that Thomas had not been actively involved in the case since August 2022. (*Id*.). On January 23, 2023, the Court granted Thomas's Motion to Withdraw and terminated Thomas's representation of Klapp. (Doc. No. 237).[3] Klapp pled guilty on February 26, 2024, and is scheduled to be sentenced on December 9, 2024.[4] (Doc. No. 299).

---

[2] Freedom Medical Labs, LLC, a/k/a Sole Marketing Services, LLC ("Freedom") was mentioned anonymously in the Superseding Indictment and mentioned again, this time openly, in the Second Superseding Indictment. Richardson and Burch are principals of Freedom, which, as discussed herein, was represented for a period of time by Thomas. Since the filing of the Second Superseding Indictment, Richardson has been represented by attorneys Jonathan P. Farmer, Edward M. Yarbrough, and Steven C. Fann. Burch has been represented by attorney Peter J. Strianse.

[3] Thomas no longer represents any Defendant in this case.

[4] At the time Klapp pled guilty, he was represented by attorneys David Tarras and John G. Oliva.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 14 provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "[W]hen defendants properly have been joined under Rule 8(b),[5] a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zaifro v. United States*, 506 U.S. 534, 538 (1993). "A defendant seeking severance at trial from co-defendants bears a strong burden and must demonstrate substantial, undue, or compelling prejudice." *United States v. Davis,* 177 F.3d 552, 558 (6th Cir. 1999); *see also United States v. Martinez*, 432 F. App'x 526, 529 (6th Cir. 2011) ("Risk of simple prejudice is insufficient to sever the trials of co-defendants; the prejudice must be compelling, specific, and actual.") (citation and quotation marks omitted). However, "Rule 14 does not require severance even if prejudice is shown; rather it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zaifro* at 541.

## ANALYSIS

Defendants argue that a prejudicial conflict of interest emerged when Thomas began representing Klapp in the instant criminal proceedings because Thomas had previously represented

---

[5] Neither Richardson nor Burch argue misjoinder under Rule 8(b).

Freedom and Richardson during the timeframe specified in the Second Superseding Indictment.[6] (Doc. No. 274 at 7-8). Defendants assert that the successive representation in matters "with inextricably intertwined allegations of fact and criminal counts" not only violates rules of ethics but [creates an actual conflict of interest that] prejudices Defendants' ability to have a fair trial and warrants severance."[7] (Doc. No. 274 at 2). To support this contention, Defendants first point to Rule 1.9 of the Tennessee Rules of Professional Conduct, which addresses the issue of successive representation:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Tenn. R. Prof. Con. 1.9(a). (Doc. No. 274 at 6). According to Defendants, Thomas never obtained

---

[6] While the scope and length of Thomas's representation of Freedom and/or Richardson and Burch is not entirely clear to the undersigned, they are not necessarily material to the ultimate issue before the Court. However, it is worth noting that Richardson asserts that he retained Thomas as the attorney for Freedom in early 2019, but also asserts that in 2020, Thomas represented *both Freedom and Richardson* while "investigations were underway." (Doc. Nos. 274 at 4-5). Burch echoes Richardson's characterization of Thomas's representation of *both Freedom and Richardson* during the time of the alleged unlawful conduct set forth in the Second Superseding Indictment but falls short of claiming that he (Burch) was individually represented by Thomas. (Doc. No. 304 at 3). The Government paints a slightly different picture, claiming that it gleaned knowledge of Thomas's representation of *Freedom* only through Assistant United States Attorneys (AUSAs) in the District of South Carolina, who were investigating allegations of violations of the False Claims Act and ultimately filed a civil complaint against Freedom, Richardson, and Burch in *United States et al. v. Premier Medical, Inc. et al.,* C.A. No. 6:18-cv-00165-TMC (D.S.C) ("South Carolina case") (Doc. No. 285 at 2). The Government suggests that Richardson and Burch were both individually represented by counsel other than Thomas throughout the criminal investigation. (*See* Doc. No. 285 at 3, fn. 2) ("Similarly, up until the second superseding indictment, the United States dealt with prior counsel for Richardson and Burch, both of whom are based in South Carolina."). This suggestion is consistent with the fact that Thomas is not listed as a current or former attorney of record for Freedom, Richardson, Burch, or any other party in the South Carolina case. Similarly, the Government represents that the AUSAs in the Middle District of Tennessee have never communicated with Thomas in any capacity. (Doc. No. 285 at 7).

[7] Despite the lack of clarity as to the scope and length of Thomas's representation of Freedom, Richardson, and/or Burch, it is clear to the Court that Defendants' conflict-of-interest arguments relate to a successive representation (representation at trial solely of a codefendant of a defendant previously represented) rather than a joint representation (simultaneous representation of codefendants at a single trial) or multiple representations (representation of multiple codefendants at severed trials).

Richardson's consent to waive any conflict of interest that resulted from his successive representation of Klapp on a substantially related matter; thus, Thomas's successive representation of Klapp was prohibited. (*Id.*). Second, Defendants argue that prejudice should be presumed due to an "actual conflict of interest" that existed during the successive representation of Klapp—a conflict of interest that, according to Defendants, adversely affected their "rights to fair trial and assistance of counsel free of conflicting interest."[8] (Doc. No. 304 at 3; *See also* Doc. No. 274 at 6-7).

Defendants speculate about how Thomas's limited (and now-terminated) representation of Klapp could be materially adverse to the interests of Freedom, Richardson, (and possibly Burch). Defendants also present unsubstantiated hypotheticals about how Thomas could have revealed to Klapp information that could be used against Richardson and Burch at the trial of this case.[9] (Doc. No. 274 at 10). These conjectured possibilities fall short of establishing an actual conflict of interest that has compromised Defendants' trial rights, and—perhaps even more consequentially—Defendants have failed to establish (or even try to establish) that separate trials (via the requested severance) would remedy any possible prejudice to them caused by Thomas's successive and limited representation of Klapp. For starters, Thomas no longer represents any Defendant in the instant criminal case, and so there is no current conflict of interest even if one previously existed. Additionally, Klapp has entered a plea of guilty and will not be a codefendant in any trial that takes

---

[8] The Court sees little merit in this argument. As noted by the Government, the cases Defendants "cite on the issue of conflict of interest relate to an actual, ongoing conflict of interest [which is not present in this case] and whether the attorney with the conflict provided ineffective assistance of counsel." (Doc. No. 285 at 7).

[9] *See* Doc. No. 274 at 10. ("Thomas knew about Richardson and Freedom's records, documents, defenses, and strategies, then subsequently represented Defendant Klapp. It is not an impermissible leap to presume that, in representing Klapp, Thomas informed him of all the information he knew of the Government's case, including information learned during the course of his representation of Richardson.")

place. Moreover, the Government vehemently denies that it received confidential information from Klapp that it plans to use against Richardson at trial. (*See* Doc. No. 285 at 7) ("[T]he undersigned AUSAs have never received any such confidential information. They have never spoken to Thomas in any capacity. And, the undersigned AUSAs have no information to suggest that Klapp received such information from Thomas that could be used against Richardson."). Of course, the denial could be inaccurate as far as the Court knows, but the denial does highlight the purely speculative nature of the specter of Klapp-to-Government disclosure of confidential information.

And even if the Government already has obtained (or in the future will obtain) such information from Klapp, Defendants did not at all articulate why any resulting prejudice would not be equally present in a separate trial. Tellingly, neither of the Defendants even file a reply to the Government Responses, which in pertinent part made this very point. (Doc. No. 285 at 6 ("[E]ven if such prejudice did exist, it is unclear how a trial severing Richardson from other co-defendants mitigates any such prejudice."); Doc. No. 305 at 1 ("[E]ven if any prejudice did exist, the motion fails to show why separate trials is the proper remedy.")). Simply put, if the Court were to grant Defendants' Motions, any possibility of prejudice would still exist just as if the Motions had been denied; therefore, severance is not the appropriate remedy for any prejudice caused by Thomas's successive representation of Klapp. The kind of thing is devastating to a movant's ability to clear the high bar that exists for a motion to sever.

## CONCLUSION

Having found no actual or potential conflicts of interest that would be remedied by severance, the Court need not (at this time) inquire further into Thomas's limited and (now-terminated) representation of Klapp and currently sees no need for separate trials. For the reasons explained above, Defendants' Motions are **DENIED**.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE